IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JACK WALKER,<br><br>Plaintiff,<br><br>vs.<br><br>300 SOUTH MAIN, LLC,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER ON POST TRIAL ISSUES<br><br><br><br>Case No. 2:05-CV-442 TS |

I.  INTRODUCTION

For many years, Plaintiff Jack Walker has owned and operated a drug store in his shopping center.  Shortly after it purchased the property adjacent to Walker's property, Defendant 300 South Main decided to develop that property in a manner Walker believed violated a forty-year old agreement regarding joint use of the parking areas, entrances, and exits located on the land situated between his shopping center and 300 South Main's property.  This action ensued.

After a four-day trial, the jury returned a verdict generally in Walker's favor.  The jury found Walker had an express oral easement, a prescriptive easement, and an easement by estoppel, for himself and his customers through the entry ways and exits on 300 South

Main's recently purchased property.  The jury also found Walker was not estopped from asserting that such easement included the property covered by the teller bays on 300 South Main's property.[1]  The jury further found that Defendant 300 South Main had a similar easement on Walker's property—a logical corollary to Walker's position regarding the agreed common use of the parking areas.  The jury found against Walker only on his alternative claim he had an express written easement.

Prior to trial, the Court ruled that Walker's jury demand was timely and the parties briefed the question of which issues should be tried to the jury.  The Court made the following determination in its Memorandum Decision and Order on Jury Trial Issues:

> The Court finds that the claims of express written and oral easements are contract actions that require findings of fact by the jury.  The Court finds that claims of prescriptive easement and easement by estoppel require a determination on whether the easement exists, and therefore require a jury trial.
>
> However, once the jury makes its findings on the existence of an easement, all issues regarding relief relating to an easement are equitable issues for the Court.
>
> Defendant contends that Plaintiff's claim for express written easement and Defendant's defenses of marketable record title and merger are issues for the Court, because they involve interpretation of contracts. However, it appears to the Court that they all involve issues of fact regarding Plaintiff's claimed written easement and prescriptive easement.  Therefore, it appears that they will be submitted to the jury, subject to revisiting the issue at the close of evidence. [2]

---

[1] 300 South Main's property was formerly occupied by a bank.

[2] Docket No. 192, Jury Issue Order, at 5 (footnoted citation omitted).

At the close of the evidence, the Court determined that the issues of marketable title and merger would not be submitted to the jury. After the jury rendered its verdict generally in favor Walker's position, the Court requested briefing on what issues, if any, remained for the Court.

300 South Main argues the Court should do the following: (1) find 300 South Main's defense of merger bars Walker's express oral easement; (2) find 300 South Main's defense of marketable record title bars Walker's express oral easement; (3) reverse the jury's finding of prescriptive easement, or exclude the space under the teller bays from Walker's easement; (4) either reverse the jury's finding regarding easement by estoppel or exclude the space under the teller bays from Walker's easement; and (5) find that 300 South Main's equitable defenses of waiver and laches bar any finding of an easement. 300 South also challenges the jury instructions and seeks to revisit the Court's pretrial rulings on issues of law.

Walker argues that the jury resolved all issues of fact and that those facts, plus the jury's findings on the existence and scope of Walker's easements, resolve all issues in the case other than costs.

## II.  MERGER

300 South Main contends that the doctrine of merger precludes Plaintiff's claim for an express oral easement.   Walker contends that the doctrine does not apply and, if it does, the collateral exception applies.

> The merger doctrine, as a general rule, declares "that on delivery and acceptance of a deed the provisions of the underlying contract for the conveyance are deemed extinguished or superseded by the deed."  The

doctrine applies "when the acts to be performed by the seller in a contract relate only to the delivery of title to the buyer." "Execution and delivery of a deed by the seller then usually constitute full performance [by the seller], and acceptance of the deed by the buyer manifests [the buyer's] acceptance of that performance even though the estate conveyed may differ from that promised in the antecedent agreement." As a result, where the acts to be performed by the seller in a contract relate to the delivery of title, the deed is the final agreement and all prior terms are extinguished and unenforceable.[3]

There are certain exceptions to the application of the merger doctrine, however. Under the collateral rights exception, if the original contract calls for performance of some act that is collateral to the conveyance of title, the contractual obligations are not extinguished, but instead survive the deed.[4]

When seller's performance is intended by the parties to take place at some time after the delivery of the deed it cannot be said that it was contemplated by the parties that delivery of the deed would constitute full performance on the part of the seller, absent some manifest intent to the contrary.[5]

As noted in the Court's order, any application of the doctrine of merger and marketable title were dependent on the jury's findings. In order to find an express oral easement across "all property owned by Defendant 300 South Main with the exception of the property directly beneath the existing bank building," the jury was required to find all of the following three elements:

1. Mr. Walker entered into an oral agreement for an easement, the terms of which agreement were clear and definite;

---

[3] *Spears v. Warr*, 44 P.3d 742, 748-49 (Utah 2002)(quoting *Dansie v. Hi-Country Estates Homeowners Ass'n*, 1999 UT 62, ¶ 19, 987 P.2d 30; *Secor v. Knight*, 716 P.2d 790, 792 (Utah 1986); and *Stubbs v. Hemmert*, 567 P.2d 168, 169 (Utah 1977)) (abrogated on other grounds).

[4] *Id*. at 749.

[5] *Dansie*, 987 P.2d at 35.

4

    2.      Both parties partially or fully performed under that agreement; and

    3.      Mr. Walker relied on the agreement to his detriment by undertaking acts that he would not have performed had the oral agreement not existed.[6]

In support of its merger argument, 300 South Main relies on the deeds filed in 1961[7]—before the construction, use, and maintenance of the jointly used parking lot—and on merger doctrine cases where the events at issue occurred prior to the issuance of the deed.[8]  In contrast, in the present case, the evidence was that 300 South Main's predecessor agreed with Walker that, after actual transfer, Walker would design, construct, and maintain the joint parking lot to the benefit of both properties.  Thus, the parties intended that seller Walker's performance take place sometime after the delivery of the deed.  As found by the jury, the performance occurred.  Where both parties' performances and Walker's detrimental reliance occurred well after the transfer by deed, the merger

---

[6] Docket No. 205, Jury Instruction No. 19.

[7] Def.'s Mem. at 3 and Ex. Nos. 4 (Special Warranty Deed recorded in 1961), 5 (same).

[8] *Panos v. Olsen and Assoc. Const., Inc.*, 2005 UT App 446, ¶¶ 11-13 123 P.3d 816 (applying merger doctrine to find deed was final integrated agreement that abrogated all prior agreements of the parties); *Maynard v. Wharton*, 912 P.2d 446, 449-50 (Utah Ct. App. 1996) (finding buyer's unsigned "closing instructions" did not fall into exception to the merger doctrine and, therefore, merger doctrine precluded buyers from bringing claim to additional lot after buyers accepted and recorded a deed from sellers); *Secor*, 716 P.2d at 795-96 (applying merger doctrine to find restrictive covenant in deed was enforceable despite buyer's claim of pre-deed terms of conveyance to the contrary); and *Stubbs*, 567 P.2d at 169-70 (Utah 1977) (holding the doctrine of merger did not bar evidence of earnest money agreement provision that plaintiff could remove some, but not certain specified equipment, after the property was transferred because parties intended performance to take place sometime after delivery of deed).

doctrine has no application because the parties implemented their agreement after the transfer of title.

Walker argues that the collateral exception to the merger doctrine applies and 300 South Main argues that it does not. The Court need not determine if the exception applies because the merger doctrine does not preclude the claim of an express oral easement on the facts, as determined by the jury.

### III.  MARKETABLE TILE

300 South Main contends that Utah's Marketable Record Title Act bars Walker's express oral easement. Walker contends that the doctrine does not apply under each of three separate exceptions. Utah's Marketable Record Title Act[9] provides:

> Any person . . . who has an unbroken chain of title of record . . . for forty years or more, shall be deemed to have a marketable record title . . . as defined in Section 57-9-8, subject only to the matters stated in Section 57-9-2 . . . .[10]

Section 57-9-8(1) defines "marketable record title" as title that operates to extinguish [certain specified] interests and claims, existing prior to the effective date of the root of title." However, the marketable record title created under the Act is subject to, among other exceptions:

> (2) all interests preserved by the filing of proper notice or by possession or by the same owner continuously for a period of 40 years or more, . . .

---

[9] Utah Code Ann. §§ 57-9-1 through -10.

[10] *Id*. § 57-9-1.

(3) The rights of any person arising from prescriptive use or a period of adverse possession or use, which was in whole or in part subsequent to the effective date of the root of title;[11]

In the present case, the Court finds, as the jury did, that Walker has a prescriptive easement. Walker's prescriptive easement is an exception to the marketable record title under § 57-9-2(2). Accordingly, the Court finds the Record Marketable Title Act does not bar the defense of record marketable title. Because the Court finds that Walker's prescriptive easement is an exception to the Act, the Court need not address Walker's arguments that he has shown he meets two additional exceptions to the Marketable Title Act.

## IV. PRESCRIPTIVE EASEMENT

300 South Main argues the Court should reverse the jury's finding of prescriptive easement, or exclude the space under the teller bays from Walker's prescriptive easement. Walker contends the jury verdict should stand and that the scope of the easement should be determined by the historical use of the entire space.

300 South Main first argues that the Court should have determined the issue of a prescriptive easement. As discussed in the Court's Order on Jury Issues,[12] the existence of an easement by express oral agreement, prescription, or estoppel are issues for the jury. Once the existence of an easement is determined, issues of relief are for the Court.[13]

---

[11] *Id.* § 57-9-2(2-3).

[12] Docket No. 192, at 5.

[13] *Id.*

Further, as discussed below in connection with its findings on the scope of the easement, the Court's own findings are that there was a prescriptive easement.

300 South Main next argues that the jury's prescriptive easement finding should be overturned because Jury Instruction No. 21 was based on what it characterizes as "unclear" language from *Orton v. Carter*.[14] 300 South Main argues that *Orton* and *Richins v. Struhs*,[15] which *Orton* relied on, do not support the language in Instruction No. 21. The Court disagrees. Instruction No. 21 accurately reflects Utah law as set forth in *Orton* and *Richins*.

300 South Main also argues that Instruction No. 21 is incorrect in stating "if a claimant thinks he has obtained a conveyance of an easement which is ineffective, his use of that ineffective easement over the land of another, made on the assumption that the conveyance was legally effective, is adverse." In *Lunt v. Lance*,[16] a case decided after the briefing on the present issues, the Utah Court of Appeals examined the ruling in *Richins*. As in *Orton* and *Richins*, *Lunt* involved an agreement to build access across what the parties believed to be their joint property line and the harmonious use of that access for many years. In each case, many years later one of the owners determined that the access

---

[14] 970 P.2d 1254 (Utah 1998).

[15] 412 P.2d 314 (Utah 1966).

[16] 2008 UT App. 192, 186 P.2d 978.

8

was on its own property and sought to block the other's use. In *Lunt*, the court noted that seemingly harmonious common use could show adverseness.[17]

In *Orton*, the court held that on the facts of that case, "where the parties (predecessors) jointly establish and used a driveway on what they thought [was] their common boundary," the use must be deemed to have been adverse despite the fact that the parties initially created the common lane by mutual agreement.[18] In so finding, the *Orton* court referenced case law from Washington state holding that claimants who believe they have an express easement can show it had ripened into a prescriptive easement by showing an oral grant of an easement had been given but not recorded.[19] In other words, the *Orton* court, like the *Lee* court, found that the use was under a claim of right and therefore was adverse.

This rule cited and relied upon in *Orton* is in accordance with the Restatement (Third) of Property § 2.16:

> A prescriptive use of land that meets the requirements [of use that is open or notorious, and continuous without effective interruption for the prescriptive period] creates a servitude. A prescriptive use is *either*
>
> (1) a use that is adverse to the owner of the land or the interest in land against which the servitude is claimed, or

---

[17]*Id*. at 986 n.8 (citing *Richins*, 412 P.2d at 314-16 and noting that in that case, "because the defendant did not know that the common driveway was on his property, he could not have granted permission").

[18]*Orton*, 970 P.2d at 1259.

[19]*Id.* (citing and quoting *Lee v. Lozier*, 945 P.2d 214, 219 (Wash. Ct. App. 1997) (further quotation omitted).

(2) a use that is made pursuant to the terms of an intended but imperfectly created servitude, or the enjoyment of the benefit of an intended but imperfectly created servitude.[20]

Like the defendants in *Orton*, 300 South Main claims that the use was by permission only. The jury was instructed that 300 South Main could rebut Walker's claim he had established adversity by a claim of right by showing the use was by permission. Further, despite 300 South Main's arguments that the jury was not correctly informed that use with permission is not adverse, Instruction No. 21 informed the jury: "the use of land by a non-owner is ordinarily presumed to be without permission. This presumption may be rebutted if 300 South Main can show it was used with permission."[21]

Thus, 300 South Main had the opportunity to present its evidence on permission and argue to the jury that its evidence showed that Walker's use was merely by permission. By finding there was prescriptive easement, however, the jury necessarily found that Walker's use was not by permission. Accordingly, 300 South Main has not shown that the jury's finding of a prescriptive easement should be overturned.

300 South Main also argues that the jury's findings of prescriptive easement and of easement by oral agreement are inconsistent. Walker argues that the findings are not inconsistent because the court in *Orton* held similar facts could support a finding of either easement by prescription or by express oral agreement.

---

[20] Restatement (Third) Property-Servitudes § 2.16, bracketed material inserted from *id*. §2.17(elements of prescriptive use).

[21] Docket No. 205, Instruction No. 21.

The Court agrees with Walker. *Orton* found that similar findings of fact could support either a prescriptive easement or an express oral easement.[22] This is because, as discussed above, use under a claim of right under an intended, but imperfectly created, easement can establish a prescriptive easement.[23]

300 South Main next argues that the Court should define with specificity the scope of the easement. The Court agrees, and will do so below.

300 South Main also argues that the jury's verdict should be overturned to the extent that it determined that Walker's prescriptive easement extends to the property under the teller bays. This refers to the jury's answer to question No. 6 on the Verdict Form. That question asked if 300 South Main had proven that Walker "is estopped from claiming that he has an easement for his customers and employees to access his property through 300 South Main's property that is currently covered by the teller bays."[24] The Jury answered "no" to question No. 6. The Court discusses estoppel below.

## V. EASEMENT BY ESTOPPEL

300 South Main argues that the Court should reverse the finding of an easement of estoppel because Utah does not recognize easement by estoppel. The Court has already ruled on this issue in connection with the jury instructions.[25]

---

[22]970 P.2d at 1260.

[23]Restatement (Third) Property-Servitudes § 2.16.

[24]Docket No. 207 at ¶ 6.

[25]Jury Instruction No. 22 (easement by estoppel). *See also* Restatement (Third) Property-Servitudes § 2.10 (elements of easement by estoppel).

300 South Main argues that there is no evidence to support the jury's finding on estoppel. The Court finds that there is evidence to support the finding on estoppel. Walker and another witness testified that, after the teller bays were constructed, Walker's customers continued to use the property under the teller bays to exit the common parking lot. Thus, there was continual use of the easement over the land now covered by the teller bays.

300 South Main also argues that there was no easement by estoppel where it had no constructive notice of any easement. Walker argues there was constructive notice.

The evidence showed two possible sources of constructive notice. The first source consists of the 1969 Special Warranty Deeds attempting to memorialize the parties' agreement for Walker's easement. Walker filed these deeds well after he had already transferred the property to 300 South Main's predecessor. Although ineffective, the deeds were recorded and showed an attempted claim by Walker, who remained the owner of the adjacent property when the Shaffrons[26] and 300 South Main purchased the property. This was some notice of a claim,[27] although the deeds by themselves appear to be legally ineffective. The second source of constructive notice is the layout of the property and its common use. The Court need not determine if the 1969 deeds provided constructive notice because, for the reasons stated below in the Court's findings, the configuration and use of the parking lot provided constructive notice that 300 South Main's property was

---

[26]The Shaffrons purchased the property and immediately transferred it to 300 South Main, LLC, an entity they created to develop the property.

[27]300 South Main brought claims against a third party relating to these deeds.

being used by Walker's customers for common parking and for common entry and egress. In particular, the Court finds that the configuration of the parking spaces directly in front of Walker's store near 300 South provided constructive notice that 300 South Main's property was being used to travel across to the wide apron on 300 South, part of which Walker's customers and employees were using as an entrance and all of which they were using as an exit.

## VI. ESTOPPEL, WAIVER AND LACHES DEFENSES

300 South Main argues its defense of estoppel is an equitable defense that the Court should not have submitted to the jury. It contends that there was no constructive notice of the easement under the teller bays. It also contends that Walker's claim of an easement under the teller lanes and bays is barred by laches and waiver.

> "A waiver is the intentional relinquishment of a known right. To constitute waiver, there must be an existing right, benefit or advantage, a knowledge of its existence, and an intention to relinquish it." A defense based on equitable estoppel bars recovery if (1) a party acts or fails to act in a manner that is inconsistent with a subsequent claim, (2) a second party reasonably acts or does not act because of the first party's original act or failure to act, and (3) the second party would suffer injury if the first party were allowed to repudiate such act or failure to act.[28]

"To successfully assert laches one must establish that (1) plaintiff unreasonably delayed in bringing an action, and (2) defendants were prejudiced by that delay."[29]

---

[28] *Shaw Resources Ltd., L.L.C. v. Pruitt, Gushee & Bachtell, P.C.*, 142 P.3d 560, 571 (Utah App. Ct. 2006) (quoting *Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n*, 857 P.2d 935, 942 (Utah 1993)) (citation omitted).

[29] *Nilson-Newey & Co. v. Utah Resources Intern.*, 905 P.2d 312, 314 (Utah App. Ct. 1995).

For the reasons stated above, the Court finds that Walker is not estopped from claiming his easement runs under the teller lanes and bays because his customers continued to cross that property and use the land covered by the bays to exit onto Third South Street after the bays were built.

As to waiver, the Court finds there is no showing Walker intentionally intended to relinquish his known rights regarding that portion of the property. Similarly, the Court finds no evidence that Plaintiff unreasonably delayed in bringing this action.

Since the briefing was completed on the present Motions, the Utah Court of Appeals has applied the doctrine of abandonment of an easement in *Lunt* to find that a prescriptive easement was subsequently partially abandoned by non-use of the portion of the easement subsequently blocked by building a gate.[30] Abandonment was not addressed by the parties herein. The Court will not seek additional briefing on the issue of partial abandonment of the easement because it appears that the doctrine of abandonment would not apply where, as in the present case, there was continued use of the entire easement.[31]

## VII. SCOPE OF EASEMENT RE: TELLER BAYS

300 South Main argues that the Court must determine the scope of the easement and limit it to exclude the land under the teller bays. Walker contends that because the jury found that 300 South Main did not show that Walker was estopped from asserting his

---

[30] 186 P.3d at 986-87.

[31] *See id.* at 986-88 (holding "an easement is abandoned only where the easement holder releases its rights in the easement with evidence of a clear and convincing intent to no longer exercise the easement rights").

easement extended under the teller bays, there is no reason for the Court to determine the issue. The Court finds that the parties still dispute the scope of the easement on the property covered by the teller bays. Therefore, the Court will grant 300 South Main's request to determine the scope of the easement. Due to the configuration of the parking lot and its historic use, the entire area related to the teller bays—a rectangular area—must be considered together because it was used together. That rectangle is approximately bordered by bank building's West side, the Walker property's East side, and has 300 South Street as its South side. Its northern side is a straight line going West from the northwest corner of the bank building, and running parallel to the Third South Street boundary of the rectangle. The Court will refer to that area as the access rectangle and will refer to the whole of the entire jointly used area, including the access rectangle, as the parking lot.

"The extent of a prescriptive easement is measured and limited by the historic use of the dominant estate owner during the prescriptive period."[32] It is error to limit the use of an easement "based on equity" instead of the "historical use of the easement."[33]

As discussed above, 300 South Main contends that estoppel and other issues are for the Court. The following findings apply to those issues as well as to the scope of the easement. Upon its own review of the evidence presented at trial, the Court finds the following by clear and convincing evidence: Walker has a prescriptive easement and an

---

[32] *Kunzler v. O'Dell*, 855 P.2d 270, 275 (Utah App. 1993) (citing *McBride v. McBride*, 581 P.2d 996, 997 (Utah 1978)).

[33] *Id.* at 275.

express oral easement on 300 South Main's property. That easement is for parking, ingress, and egress.

The Court found Walker's testimony to be especially credible. It is supported by and consistent with his design of the jointly used parking lot, as well as his long-time maintenance of the lot. Walker's testimony is consistent with the properties' owners' uninterrupted, joint, and harmonious use of the property for more than forty years.

Walker and 300 South Main's predecessor had an express oral agreement that Walker would design and construct the parking lot on the land laying between their properties, including their common borders. They agreed that it would be used for their common parking, ingress, and egress. 300 South Main's predecessor's right to use the common parking lot was perfected in its purchase documents. However, the parties' intended servitude allowing Walker's reciprocal right to also use the joint parking lot was imperfectly created. Thus, Walker does not have an express written easement.

After the agreement was made, 300 South Main's predecessor's performed under the agreement, honoring the agreement. Most of the parking stalls in the jointly used parking lot are on Walker's property, but some are partially or fully on 300 South Main's property. Walker fully performed under the agreement. He designed and built the parking lot on the land between the businesses as a common parking lot with common entrances and exits. Walker's design for the configuration of the parking lot can only be explained by the existence of the oral agreement that the parties would jointly use it for parking, ingress and egress. Similarly, his construction and maintenance of the parking lot, and its manner of use from the time it was constructed through the time of trial, can only be

explained by the existence of the oral agreement.  Walker's performance is consideration for the express oral agreement for his easement.

Walker, his customers, and his employees continuously used the current parking stalls and current entryways and exits on 300 South Main's property.  This use by Walker, his customers, and his employees continued uninterrupted from the time the parking lot was built through the time of trial.  Walker maintained the parking lot in accordance with the agreement.

The teller lanes were built on 300 South Main's property in the access rectangle.  The parties did not intend the teller bays to block the access to or from 300 South Street or to otherwise interfere with the historic use of Walker's easement over the access rectangle.  After the teller bays were built, Walker, his customers, and his employees continued to use the area under the bays for access, up through the time of trial.  The third teller bay, the one closest to Walker's property, is only partially roofed and has no western side enclosing it.  Vehicles drove under that part of the bay to exit and enter the parking lot.  The entire southern edge of the access rectangle is a drive apron.  Up through the time of trial, all three bays were used to exit the parking lot.

The Court did not find the testimony of Mr. Shaffron, a principal in 300 South Main, to be credible that he was not on notice that the 300 South Main property was used by Walker, his customers, and employees for ingress, egress and for parking.  The clearly visible configuration of the commonly used parking lot, entrances, and exits show that the parking lot is specifically designed for joint use.  The end spaces on three of the rows of

parking are partially on 300 South Main's property.[34]  The entire parking lot is configured for diagonal parking, which directs the flow of its users to only three entrances/exits, two of which are located on 300 South Main's property.[35]

Because of the way in which the parking lot is configured, vehicles that park on the North and the West sides of the lot end up facing South when they exit.  The most efficiently way for them to do so, without an entirely unnecessary doubling back up through nearly the entire length of the parking lot, is to exit from either the Third South Street exit or the more southern of the two Main Street exits.  Both of these exits are located on 300 South Main's property and can only be accessed by driving across 300 South Main's property.

Similarly, the parking lot's configuration means that when Walker, his employees, or customers park in the clearly marked diagonal stalls directly in front of his business along the southwest boundary of the parking lot, they must first back up into 300 South Main's property and then drive across 300 South Main's property in order to exit onto Third South Street.[36]  Because the only possible exit from Walker's five or six stalls parking stalls located closest to the Third South Street is to back up onto the 300 South Property and then exit across it through the area partially covered by the third teller bay, the use of the

---

[34]*See, e.g.*, Plaintiff's Exs. 1 (aerial view of properties showing parking striping and boundaries) and 25 (aerial view of properties showing boundaries, existing drive apron locations, and striping for parking stalls).

[35]In addition to the disputed area, Walker also has some parking stalls located entirely on his property along the South side of his business building. This Decision does not involve those parking stalls.

[36]Because these stalls are on the diagonal, their exit is directed to the South.

property for access to the Walker property would be plainly visible to any reasonable person viewing the property. Similarly, because the part of Walker's property that borders the access rectangle is covered with parking stalls nearly to the street, the use of the access rectangle for entry and exit by Walker's customers would be plainly visible to any reasonable person viewing the property.

The Court also finds by clear and convincing evidence that Walker is not estopped from asserting his easement over the land covered by the teller bays. The use of the entire access rectangle for access to the parking lot and to Walker's property was continued uninterrupted despite the building of the teller bays. For the reasons stated above, the Court finds that 300 South Main has not established its defenses of estoppel, laches or waiver.

The historic use of Walker's easement over the access rectangle has been driving across the property for the purpose of entering and exiting the parking stalls bordering the access rectangle and for egress and ingress for the parking lot. The existence the teller bays has never interfered with this use. However, the Court finds that since the time of building the teller bays, the historic use of the easement on the access rectangle itself has not included parking. Therefore, the Court finds that while Walker's easement over the parking lot and its entrances/exits is for parking, ingress and egress; the easement over the access rectangle is for access, ingress, and egress, but not for parking.

## VIII. CONCLUSION

Walker has an easement by express oral agreement, prescription, and estoppel over the 300 South Main's property except for the following property: the area covered by

the original bank building.  Walker's easement also covers the entire access rectangle.  But Walker's easement over the entire access rectangle does not include the right to park on that access rectangle.

The issue of costs is not before the Court at this time.  It is therefore

ORDERED that the parties shall prepare and submit a proposed form of judgment incorporating the  jury verdict and the Court's findings herein within thirty days of the entry of this order.

DATED   November 7th, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge